## THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *vs.* AMBROSE WAGER.

The contract of insurance is an executory contract, executed by the payment of the sum insured, on a loss.

If there was fraud in an original contract of life insurance, not known when the loss was paid; or if the loss was paid in ignorance of some circumstance attending the loss, which if known would have enabled the insurers to resist the claim, the money may be recovered back; but if they knew, when they paid the loss, or upon inquiry might have informed themselves, of the grounds upon which they could have resisted the claim, they cannot afterwards recover the money back.

If a party intends to plead ignorance of a fact which, if known, would have prevented his making an executory contract, originally, he must do it when

Mutual Life Ins. Co. of New York *v.* Wager.

called upon to carry the contract into effect; if upon inquiry he could have informed himself of such fact. After having executed the agreement, he cannot avoid it on the ground of mere mistake.

The payment of money upon such a contract, by a party thereto, with the knowledge, or with the means of knowledge, of such fact, will be deemed a voluntary payment; and the party will be estopped thereby from alleging ignorance of such fact, in an action subsequently brought by him to recover the money back on the ground that the original contract was entered into under a mistake of facts,

If insurers voluntarily pay the amount of a loss upon a life policy, they are barred by their own act from subsequently maintaining a suit to recover the money back, on any ground affecting the validity of the original contract, merely, known, or which upon inquiry might have been known, when they paid the loss; except fraud.

In such action they will be deemed, by the payment, to have settled, or waived, all questions of law or of fact as to the validity of the original contract—except fraud—which they had the means of raising when they paid the loss.

Consequently, the money so paid cannot be recovered back, on the ground of false representations made by the assured, or his agent in regard to the state of the assured's health, at the time of applying for insurance. INGRAHAM, J., dissented.

Where a creditor procures an insurance upon the life of his debtor, to secure the amount of his advances, and so notifies the insurers, at the time, he is entitled to the amount due him at the debtor's death. If he knowingly claims and receives more than that amount, the insurers may recover back the excess.

If the representatives of the insured are obliged to sue upon the policy, the burthen of proving their claim rests on them; but in a suit brought by the insurers, to recover back the amount paid by them upon the policy, on a loss, on the ground of fraud and misrepresentation, the burthen of proof lies upon the insurers.

THIS action was brought to recover back from the defendant $2566.34, paid him by the plaintiffs, October 25, 1851, being the amount insured by them in his favor, December 18, 1845, on the life of one Woodward Frisbie, who died September 30, 1851. The plaintiffs claimed to recover on the ground of an alleged false and fraudulent declaration of the defendant made at the time of effecting the insurance: 1st, that Frisbie was not, to the defendant's knowledge, " afflicted with spitting of blood, or any disorder which tends to the shortening of life;" and 2d, that he had an interest in Frisbie's

life to the amount of $2500; and also upon the ground that when applying for payment of the loss, he fraudulently concealed the fact that Frisbie died of consumption, and represented that he had died of a disease of the lungs of recent origin, accompanied with diarrhea. The case was tried before Mr. Justice MITCHELL, at the New York circuit. A declaration by Frisbie, dated December 11, 1845, was produced, certifying that he had not been afflicted with (among other things) spitting of blood, and was not then afflicted with any disorder which tends to the shortening of life. The defendant signed a declaration dated December 8, 1845, to the same effect, *as far as he knew*, and that he was interested in Frisbie's life to the amount of $2500. Wager, the defendant, and Frisbie, the decedent, resided at Rhinebeck, when the policy was effected. Application was made for it to Fonda, the agent of the company, at Poughkeepsie. The applicant produced the certificate of Dr. Freligh, a neighbor, which stated that Frisbie had slight chronic bronchitis. Fonda required an examination by Dr. Thomas of Poughkeepsie, who was the regular examiner for the company. Fonda and Thomas were produced as witnesses on the trial. The examination was full and careful, and with a knowledge on the part of the company that Frisbie had had *chronic bronchitis*. The proofs furnished on the application for payment of the loss were read in evidence. By these it appeared that Frisbie, with his wife, went from Rhinebeck in September, 1851, to visit his relatives at Coventry, Chenango county, and there died of " a disease of the lungs, accompanied with diarrhea." Dr. Eliphalet Platt, Mrs. Sarah T. Weaver, widow of decedent, Peter T. Hevenor, Thomas Reed, William Weaver and David Uhl, witnesses for the plaintiff, gave testimony tending to show that Frisbie might have had a spitting of blood within the meaning of the representation. Dr. Martin Freligh, Dr. Federal Vanderburgh, Dr. Rodman Bartlett and John Benner, gave testimony leading to an opposite conclusion. The policy provided, that if the declaration made by Wager *himself, dated*

*December* 8, 1845, should be found in any respect untrue, the policy should be void. Certain evidence was offered tending to throw doubt on the fact of any indebtedness by Frisbie to Wager. Fonda, the agent, testified, that at the time of the insurance, Wager stated that he had made Frisbie some advances, and expected to advance him more, and that the policy was effected to protect himself. Frisbie had failed, and made an assignment to Wager in 1845. Wager settled up Frisbie's affairs, and from time to time accommodated him with money to carry on his business. The judge charged the jury that if Frisbie had had spitting of blood, *and Wager knew it,* the plaintiffs were entitled to recover on that ground. But that Frisbie's knowledge of it would not be sufficient to charge the defendant, if he, the defendant, was ignorant of it. The judge also charged, that if Wager obtained the insurance to secure himself the amount of his prior and subsequent advances, and so notified the agent at the time, he was entitled to the amount due at Frisbie's death, and if he knowingly claimed and received more than that amount, the plaintiffs were entitled to recover back any excess paid by them. He further charged, that if the company had resisted, the burthen of proving his claim would have rested on Wager; but in this suit, brought to recover back on the ground of fraud and misrepresentation, what they had paid as a fair loss, the burthen of proof lay upon the company.

The counsel for the plaintiffs excepted to the charge, on the grounds, 1. That the rule of proofs as laid down therein was not correctly laid down. 2. That the concealment of the fact that Frisbie was afflicted with spitting of blood was a fraud upon the company, and that the distinction laid down by the judge had a tendency to mislead the jury. 3. That the joint statement by Frisbie and Wager, that the former had never been afflicted with spitting of blood, did make Wager responsible for the truth of Frisbie's statement. 4. That the charge that Wager was not to be responsible in this action for Fris-

bie's knowledge of any facts, unless the knowledge was brought to him, misled the jury.

The jury found a verdict for the defendant, and the plaintiff moved for a new trial.

*J. Blunt* and *J. Miller,* for the plaintiffs.   I. The charge of the judge, that " in a suit by the insured against the company the burthen of the proof would fall upon the insured, but as the company sues on a charge of fraud and misrepresentation, after paying the insurance as for a fair loss, the burthen of the proof is changed and thrown upon them," is erroneous. (1.) In the case of a defense by the company to a suit against them on the policy, the law presumes the declarations made by the insured to be true, and the burthen of showing them to be otherwise would devolve upon the company; but when the company had, by their proof, established a *prima facie* case of the falsity of such declarations, then the burthen would be shifted, and it would be the duty of the plaintiff in such action to satisfactorily explain or overcome by evidence the facts establishing such *prima facie* case.   (2.) In an action by the company to recover back the money, the same rules of evidence prevail, with the single difference, that in the action to recover back the money, the defendant in answer to the proof of facts showing such *prima facie* case, may show, as a sufficient answer, that the company paid the money with full knowledge of those facts.   (3.) The fact that the plaintiffs allege in their declaration, that the defendant " falsely and fraudulently declared," does not vary the rule. (4.) If the proofs in the action entitle the plaintiffs to recover therein, provided the words "falsely and fraudulently" had been omitted in the complaint, then they were entitled to a recovery, notwithstanding such insertion.   The *truth* of such declarations were the principal matters litigated on the trial.   And if it appeared that the declarations were untrue in fact, although made by the defendant in good faith, and that the company, relying on the truth of such declarations,

made the payment, then the company are entitled to recover the money back on the ground of a mutual mistake of facts. If, therefore, the plaintiffs failed to show that they were either "falsely or fraudulently" made, it was no variance or omission which misled the defendant to his prejudice, in maintaining his defense upon the merits; and should have been so regarded by the court. (*See Code,* § 169.)

II. The distinction made in the charge of the judge, that although in a suit by the defendant against the company, Frisbie might be considered the agent of the defendant, so far that whatever Frisbie knew of himself, would be deemed as known by the defendant, "that rule would not apply under the pleadings in this cause, and the nature of this action" was erroneous. (1.) The complaint states that the defendant declared that Frisbie was not, to the defendant's knowledge, at the time of the insurance, afflicted with spitting of blood. That such declarations were the basis of the insurance of Frisbie's life; that the company believing the declaration, made the insurance. That after they had paid the money, they discovered, for the first time, that such declarations of the defendant proved untrue. (2.) The complaint also alleges, that the insurance "was subject to a certain condition" thereunder written, whereby it was provided, that if the said declaration made by the said defendant, and upon the faith of which said policy was granted, should be found *in any respect untrue,* then, and in such case, the said policy was *to be null and void."* (3.) If the company had been sued on the policy, they would have been obliged to plead these very matters in defense, with the exception of the averment that the company discovered the declarations to be untrue after the payment to the defendant. (4.) And it cannot be that the defendant should be charged with knowledge, when the action requires him to overcome facts interposed by way of defense, and that he is not chargeable with knowledge, when the same facts are set up as a ground of claim against him. The exception in this behalf is well taken.

III. So much of the judge's charge as states that the defendant is not affected by Frisbie's knowledge of any fact, if the defendant had no knowledge of the same fact, was erroneous, and the fourth exception is well taken. (1.) The condition was, that the policy should be void, if " the declaration" should be *found in any respect untrue.* (2.) The declaration was a statement in regard to facts. (3.) These facts were the basis of the agreement, and upon the faith of which the policy was granted ; not the knowledge of the defendant as to the truth of the facts. (4.) If these facts were untruly stated in such declaration, then the policy became void, by its very conditions, whether the defendant did or did not know they were untrue. (5.) If untrue Frisbie, in the nature of things, must have known it; and as their untruth avoided the policy, Frisbie's knowledge did affect the defendant, although the defendant had no knowledge of the same fact. (6.) In making the joint averment, that Frisbie never had bleeding at the lungs, the defendant is to be deemed responsible for the truth of the statement, and as conusant of all Frisbie's knowledge on that point. (7.) Where representations are made by an agent of the insured, he is responsible for the truth of the agent's averments. (2 *Duer on Ins.* 705, 707. 3 *Bligh*, 205. 1 *Term Rep.* 12. *Maynard* v. *Rhode*, 1 *Carr. & P.* 360.) (8.) The statement as to the bleeding at the lungs, even if it had occurred but once, is material, and its omission is fatal to the policy. The charge of the judge, therefore, in confining the spitting of blood to such as might endanger life, was erroneous. In *Geach* v. *Ingalls*, (14 *Mees. & Wels.* 96,) the judge's charge on that point, similar to the charge in this case, was held erroneous. (9.) Where a creditor assures the life of his debtor, and allows such debtor to make misrepresentations as to his health, the creditor is bound by them, even if he be ignorant that they were false. (1 *Carr. & P.* 360. 5 *Dowl. & Ryl.* 266. 5 *Bing.* 503.)

IV. Assuming that the charge is in all respects correct,

then the verdict should be set aside, on the ground of its being against evidence and the charge of the judge. (1. ) The judge charged the jury, in these words: " If, however, you should agree that Frisbie knew any material fact which the defendant did *not know*, you will state that matter specially in your finding." The jury found no such fact. It therefore follows, that whatever material facts were known to Frisbie, were also, among others, known to the defendant. (2.) The judge also charges, " that the spitting of blood intended, is any spitting of blood, whether from the lungs or not, occurring any time at or before the date of the policy, provided it be of such a character as might tend to shorten life." Dr. Platt says, he never knew one instance of recovery when there was a cough before and after the bleeding of the lungs. Frisbie had both; and it was his opinion that Frisbie would never recover. · Doct. Thomas, defendant's witness, says, if he had been satisfied the man bled, he should not have given the certificate. Doct. Freleigh says, if chronic bronchitis is allowed to continue, it will lead to other diseases, and that the cough and bleeding would wear out the constitution. These three facts are therefore established, not only by the weight of evidence, but by evidence which is not in any way contradicted or impeached. 1. That Frisbie had frequently spit blood, and in considerable quantities, before he was insured. 2. That the defendant knew these facts, as the jury did not find that Frisbie knew any material facts which the defendant did not know. 3. And that such spitting of blood was of such character " as might tend to shorten life." And under the charge of the judge, therefore, the jury should have found a verdict for the plaintiffs.

V. If the defendant was in fact and in law entitled to receive any money from the plaintiffs, then, he received $1000 more than he was entitled to, as the policy, to the extent of $1000, belonged to Stephen Drury, to whom defendant had not paid any of the money, and it did not appear that he was authorized to receive it from the plaintiffs for Drury.

Drury had no interest in Frisbie's life, and to that extent the policy was a wager policy, and void. The plaintiffs were, therefore, in any event, entitled to a verdict for the $1000. The contract of insurance is one requiring the strictest good faith on the part of the assured in the representations made by him to serve as the basis of the contract. (2 *Duer*, 380, 382, 409, 410.) In this case the representations that Frisbie had not been afflicted with spitting of blood, and that Wager had an interest in his life to the full extent of $2500, were untrue in fact. If the facts had been truly stated the plaintiffs would not have issued the policy. The withholding them, and more especially untruly averring the contrary, is a fraud that vitiates the contract. (1 *Maule & Sel.* 45. 2 *Duer*, 380, 415. 1 *Term Rep.* 12.) Where the charge of the judge tends to divert the consideration of the jury from the true question at issue, a new trial should be granted. (*Hastings* v. *Banyon House Proprietors*, 18 *Maine R.* 436. 9 *Hump. R.* 411. 2 *Car. & K.* 157.)

*C. O'Conor*, for the defendant. I. Where a claim is made in good faith, and no willfully false device, pretense, or representation is set up to deceive or mislead the party against whom it is made, he must resist it, if at all, *in limine*. Whether he believes in or doubts its validity, he has no option, and must at once, and finally, make his irrevocable election to contend or yield. If he pays, he is deemed to pay voluntarily. If it is not the payment of a debt, it is a gift. (*Mowatt* v. *Wright*, 1 *Wend.* 357, 365. *Brown* v. *Mackinally*, 1 *Esp. Rep.* 279.) (1.) Where there is an actual and illegal duress of one's person or goods, he may pay any sum the wrongdoer may demand, in order to extricate himself from the existing embarrassment; and in an action brought to recover back the sum paid, may test the claimant's title. But this principle cannot be extended to the case of a mere threat to sue or distrain, &c. (*Knibbs* v. *Hall*, 1 *Esp. N. P. R.* 84. *Colwell* v. *Peden*, 3 *Watts*, 328. *Mayor* v. *Lefferman*, 4 *Gill.* 436, 428. *Maxwell* v. *Griswold*,

10 *How.* 255. 10 *Peters*, 154.) (2.) Where both parties deal fairly, and the party receiving money receives it honestly and conscientiously, a subsequent discovery by the party paying, that more was paid than he would have paid had he known all the facts, will not entitle him to rescind the transaction. (*Swett* v. *Colgate*, 20 *John.* 196.) (3.) The complaint puts the claim to recover exclusively on the ground of *fraud.*

II. There can be no doubt but the burthen of maintaining by proof the facts asserted by them in the pleadings lay upon the plaintiffs. A party whose demand is paid may throw away his vouchers, and cease to keep a watch over his witnesses. He can never be called upon to prove any thing affirmatively concerning it; the utmost he has to apprehend is being called upon to repel the imputation of fraud.

III. The ruling that Frisbie's knowledge of facts would not be sufficient to charge Wager with fraud, was strictly correct. (1.) Frisbie was not the agent of Wager. He was merely a necessary witness. The company required his production. (2.) Even if he was the agent of Wager, so that *notice* to him would be *notice* to Wager, that would not charge Wager with *fraud.* (2 *Stark. Ev.* 468. *Mowatt* v. *Wright, supra.*)

The motion for a new trial should be denied.

SUTHERLAND, J. Previous to the delivery of the policy of insurance in this case, to the defendant Wager, Frisbie, whose life was insured for Wager, made and signed a declaration that he had not been afflicted with, (among other things,) "spitting of blood," and was not then afflicted with any disorder which tends to the shortening of life. The defendant also signed a declaration, that Frisbie had not been afflicted with "spitting of blood," and that he was not then afflicted with any disorder which tends to the shortening of life, *to his knowledge.* The policy itself referred to this declaration made by Wager, and provided, that if the same should be found in any respect untrue, then the policy should be null and void.

The policy is not set out at large in the case; and it does not appear, nor is it alleged, that the declaration made and signed by Frisbie, was, by any stipulation or provision of the policy, incorporated in it, and made a warranty.

Without reference to the declaration made by Wager, made a part of the policy by the proviso, in an action on the policy by Wager, to recover the sum insured, Frisbie, in making his representations as to health, &c. would have been deemed the agent of Wager; and the question would have been, whether he (Frisbie) had misrepresented, or had omitted to communicate any *material* fact within his knowledge, as to his health. The question would not have been a question of *fraud;* but only, 1st, whether there had been any misrepresentation or concealment; and 2d, whether the fact misrepresented or concealed was material. A false representation will avoid the policy, if the actual risk was greater than it would have been had the representation been true. In such action it would not have been necessary for the insurers to show that the misrepresentation or concealment was intentional or fraudulent. Had the misrepresentation or concealment of a *material* fact occurred from a mistake as to the materiality of the fact misrepresented or concealed, the policy would nevertheless have been void. (*Vose* v. *Eagle Life Ins. Co.,* 6 *Cushing,* 42. *Swete* v. *Fairlie,* 6 *Car. & Payne,* 1. *Wall* v. *Howard Ins. Co.,* 14 *Barb.* 383. *Burritt* v. *Saratoga Mutual Fire Ins. Co.,* 5 *Hill,* 188. *Fitzherbert* v. *Mather,* 1 *T. R.* 12. *Bufe* v. *Turner,* 6 *Taunton,* 338. *Alston* v. *Mechanics' Mutual Ins. Co.,* 4 *Hill,* 329.)

Of course, if a misrepresentation of a material fact by Frisbie had been *fraudulently* made, the policy would then also have been void—not because Frisbie would have been deemed the agent of Wager in committing the fraud, but because he was his agent in making the false affirmation as to a fact material to the risk, without reference to Frisbie's fraud. Fraud implies knowledge; and Frisbie could not be deemed the agent of Wager in committing the fraud, without proof of knowl-

edge or preconcert on the part of Wager. One may be civilly legally responsible for the fraudulent pretenses or acts of his agent, without being morally guilty of his fraud.

In such action on the policy, looking at the whole case—at the representations of Wager, made a part of the policy itself by its proviso, and therefore having the force and effect of a warranty, and also at the representation of Frisbie—the first question would have been, whether the words "*to my knowledge*," interlined by Wager in his declaration, qualify only the representation immediately preceding, that Frisbie was not then afflicted with any disease which tends to the shortening of life; or extend to and qualify, also, the representation that he had not been afflicted with spitting of blood.

In such action on the policy, looking at the representations of Wager, contained in the declaration signed by him, and made a part of the policy by the virtual insertion of that declaration in the policy; as well as at the independent representations of Frisbie, presumed not to have been made a part of the policy itself; the representations of Wager, by thus being made a part of the policy, acquired the force and effect of a warranty, and the *materiality* of the representations ceased to be a question; and the only question, irrespective of the words "to my knowledge," inserted by Wager, would have been, whether they were true or false. If the insertion of these qualifying words in his declaration, and the virtual insertion of them in the policy, would have forbidden the legal inference that the unqualified representations of Frisbie were made by him as the agent of Wager, and would thus have compelled the insurers to prove that Wager knew the representations of Frisbie were false; in other words to prove *fraud on the part of Wager, such proof of fraud would have been required by this peculiar contract, and not by the general principles of law applicable to these contracts of insurance.*

If, *in an action by Wager on this policy for the amount insured,* the company would have been compelled to prove that the representations as to Frisbie's health were *false to the*

*knowledge of Wager when made,* such proof would have been required, *because they accepted Wager's declaration with these qualifying words, and made it a part of their contract of insurance.*

When, therefore, Judge Mitchell charged the jury that " in a suit by the defendant against the company (on the policy) Frisbie might be considered the agent of the defendant, so that whatever Frisbie knew, of himself, would be deemed as known by the defendant," he was strictly correct; unless the insertion of the words "*to my knowledge,*" in the defendant's declaration, made this case an exception; and then such hypothetical portion of his charge represented the rights of the company more favorably than these qualifying words permitted. But the judge further charged, that " that rule would not apply under the pleadings in this case, and in the nature of this action. The defendant is not affected by Frisbie's knowledge of any fact, if the defendant had no knowledge of the same fact;" that " In a suit by the insured against the company the burden of proof would fall upon the insured, but as the company (in this suit) sues on a charge of fraud and misrepresentation, after paying the insurance as for a fair loss, the burden of proof is changed and thrown upon them;" that, " If he (Frisbie) had (at any time on or before the date of the policy) either ' spitting of blood,' within the meaning of the policy, or any disease which tends to shorten life, and the defendant knew it when the policy was effected, then the plaintiffs are entitled to recover all the money paid by them, together with interest. If Frisbie had none of these diseases, *or if he had either of them and the defendant did not know it,* the plaintiffs cannot recover."

Now it appears to me that this part of the charge of the learned judge was worded with remarkable correctness and caution. It not being claimed, and there being no direct evidence to show, that although Wager originally, when the policy was made, did not know that Frisbie had been or was afflicted with " spitting of blood," yet that subsequently and

before he received the money of the company, he had been informed of that fact; the plaintiffs in their complaint and on the trial putting their charge of fraud and misrepresentation, against Wager, on the ground that the knowledge of Frisbie when he signed his declaration was the knowledge of Wager; and there being no evidence of any other or independent false pretense, act or device of Wager after the loss, by means of which he obtained the money; or of a misrepresentation by him of any circumstance attending the loss calculated to mislead the company and to prevent inquiry; the charge substantially was, that the plaintiffs could not recover in this suit, *without proof of fraud on the part of Wager in the making of the original contract of insurance;* in other words, that the plaintiffs could not in this suit recover back the money paid by them, on the ground, merely, that the declaration of Frisbie that he had not been afflicted with " spitting of blood," &c. was false, *and that they were ignorant of it when they paid the money.*

A distinction must be taken between the misrepresentation or ignorance of a fact *attending the loss upon which the money was paid and the contract executed, and the misrepresentation or ignorance of an original fact which induced to the making of the contract.*

The contract of insurance is an executory contract, executed by the payment of the sum insured on a loss.

If there was fraud in the original contract, not known when the loss was paid; or if the loss was paid in ignorance of some circumstance attending the loss, which if known would have enabled the insurers to resist the claim, the money may be recovered back; but if they knew, when they paid the loss, or " *upon inquiry might have informed themselves, of the grounds upon which they might have resisted the claim,* they cannot afterwards recover it back; for it would open the door to infinite litigation." (*Bibbie* v. *Lumley,* 2 *East,* 469. *Angell on Life and Fire Ins.* § 409.)

Ignorance of a fact which, if known, would have prevented

the execution of an executory contract, and ignorance of a fact which if known would have prevented its being carried into effect, are very different things. The law does not intend to extend to a party more than one opportunity fairly to litigate his rights. If he intends to plead ignorance merely of a fact, which if known would have prevented his making the contract originally, he must do it when called upon to carry the contract into effect, if upon inquiry he could have informed himself of such fact. To permit him, after its full execution by the payment of money, to recover back the money on the ground of ignorance, merely, of such fact, would, in effect, be to permit him to try the same question twice, on the same evidence; or to repent, and revoke a voluntary act. The payment with the knowledge, or with the means of knowledge, of such fact, must be deemed a voluntary payment, and the party to be estopped from alleging ignorance of such fact.

It would not be safe to say that in every case where the loss had been paid in ignorance of a material circumstance attending the loss, without any concealment or misrepresentation on the part of the party claiming, it could be recovered back on that ground alone; but the distinction between ignorance of a fact which if known would have prevented the execution of the contract originally, and ignorance of a fact which, if known, (assuming the contract to be valid,) would have prevented its fulfillment or the payment of the loss, exists; and is, I think, founded in reason and good sense.

If the policy in this case, in its insurance clause, had excepted death by consumption, and the money had been paid on information and under the belief of the plaintiffs or mutually of the parties, that Frisbie had died of scarlet fever, it is very clear the money ought to be paid back—*for it would have been paid under a mistake of facts.* But the claim here is to recover the money back because the *contract* itself, under which it was claimed the money had become due and payable, *was made* under a mistake of facts. The plaintiffs

claim that they have a right to reject the charge of fraud in the original complaint, as surplusage, and to recover the money back on the ground that the original contract, when they paid the loss, was voidable by them, because it was entered into originally under a mistake of facts.

The time for them to have avoided their contract was before its execution, if they had the means of doing so. They cannot avoid it after its execution, on the ground of mere mistake. How can we say that the plaintiffs would not have paid the loss, had they known when they paid it, that Frisbie had been afflicted with "spitting of blood" before they insured his life. They might have misjudged as to the materiality of that circumstance—they might have mistaken their own rights under the contract—they might have waived any defense they had on that ground. In this suit it must be taken for granted that they did so. They are presumed to know the law, and as to the facts, they paid the money with the same knowledge, or with the means of the same knowledge, that they had when they commenced this action. They are barred by their own act from maintaining this suit on any ground merely affecting the validity of the original contract, known, or which upon inquiry might have been known, when they paid the loss, and which would have been a defense to an action on the policy; except fraud. In this action, they must be deemed, by the payment, to have settled, or waived, all questions of law or of fact as to the validity of the original contract, except fraud, which they had the means of raising when they paid the loss.

I think, therefore, that the charge of Judge MITCHELL, as to the plaintiffs' claim of recovery on the ground of the false representations of Frisbie as to his health, was right.

The complaint alleges, that Wager represented, when he claimed the money, that Frisbie had died of a disease of the lungs of recent origin. He did die of consumption; and I should have supposed that this representation as to the cause of his death, if made, would have induced an inquiry into

the truth of Frisbie's original representation that he never had been afflicted with " spitting of blood," &c.

The charge of the judge as to the right of the plaintiffs to recover on the ground of a want of an insurable interest in the life of Frisbie, was, I think, also right.· The above reasoning, in the main, applies also to that part of his charge. Besides, if the policy was void or voidable on this ground, it was void as a mere wager policy; as being prohibited by statute. Why, after the money has been actually paid, should it be recovered back on that ground? The statute which forbids the contract, does not give this right of recovery as a penalty. A false representation by Wager as to his interest could not be a fraud on the plaintiffs, *for their risk and the premium was the same whether Wager had any interest or not.* It is unnecessary, however, to pursue this suggestion, or to see what authority could be found for it in the books. I put my opinion, that upon the whole case, the charge of the judge was right, and the case upon the law and the evidence fairly put by him to the jury, and that a new trial should be denied with costs, upon the other ground.

DAVIES, P. J., concurred.

INGRAHAM, J., dissented from so much of the above opinion as holds that the plaintiffs cannot recover for fraud which existed previous to the action and was discovered afterwards.

New trial denied.

[NEW YORK GENERAL TERM, May 3, 1858. *Davies, Sutherland* and *Ingraham,* Justices.]