HELEN EIFERT, as Administratrix, etc., of JOHN EIFERT, Deceased, Plaintiff, *v.* UNITED STATES FIDELITY & GUARANTY COMPANY, INC., Defendant.*

Supreme Court, Trial Term, Kings County, October 18, 1940.

* Affd., 261 App. Div. 1081; 287 N. Y. ——.

*Jules Chopak*, for the plaintiff.

*William J. McArthur* [*Vincent F. O'Rourke* and *George W. Stewart* of counsel], for the defendant.

HALLINAN, J.  This is an action, pursuant to section 109 (now section 167) of the Insurance Law, to recover the sum of $5,000 and interest under a policy issued by the defendant to Burkard Builders, Inc.

Plaintiff's intestate, while upon a scaffold erected to the second floor of certain premises in Maspeth, Long Island, was caused to fall when a weak or knotted piece of wood which was supporting the scaffold gave way.  As a result he sustained injuries which terminated in his death on the 29th day of November, 1936.

Burkard Builders, Inc., was the owner of the premises under construction and entered into contracts with subcontractors to do the work.  The intestate was employed by the lathing subcontractor, John Pardue.  Frederick Del Guidice, the plastering subcontractor, erected the scaffold pursuant to an agreement with Burkard Builders, Inc., and it is this scaffold which the latter furnished to plaintiff's intestate's employer pursuant to an agreement to do so.  Some of the material used in the construction of the scaffold was furnished by the Burkard corporation through its president and general superintendent, Philip M. Burkard.

Plaintiff brought an action to recover for the wrongful death of her intestate and joined as defendants therein Burkard Builders, Inc., Philip M. Burkard, its president and superintendent, and Frederick Del Guidice, the plastering subcontractor who built the scaffold.  Burkard Builders, Inc., served a cross-complaint upon its codefendant, Del Guidice.  At the close of the case the complaint against Philip M. Burkard was dismissed and the case proceeded against the remaining defendants.  A sealed verdict rendered by the jury awarded the sum of $12,500 to the plaintiff against

both of the remaining defendants but did not contain any reference to the cross-complaint. The court asked the jury, for the purposes of the record, whether they considered the cross-complaint and juror No. 1 answered, " Yes, your Honor, we did. We just took both and felt they were both guilty of negligence." The court thereupon said, " * * * You will have to maintain a separate action against Del Guidice because clearly the jury has not considered that phase of the case." It interpreted the verdict reached by the jury as a complete verdict in so far as the plaintiff was concerned.

At the time of the accident two policies issued by the defendant to Burkard Builders, Inc., were in full force and effect. One was Policy No. CCL 3948, which was issued to indemnify the corporation to the extent of $5,000 from liability imposed by law for damages on account of bodily injuries, including death resulting " by reason of the negligence of any subcontractor while engaged in the prosecution of the work described * * * ", and the other, Policy No. PC41223, which covered the direct liability of the corporation to the extent of $5,000 for bodily injuries or death " if caused by employees of the Assured engaged as such in said operations at said places; * * *. "

Following the entry of judgment, counsel for the plaintiff communicated with the defendant's representative in respect to payment. Negotiations ensued which resulted in the payment of $5,000 by the defendant to the plaintiff pursuant to an order of compromise dated December 2, 1938, made by the surrogate of Kings county, which authorized plaintiff to accept said $5,000 " on account and in part payment of the judgment entered * * * " and " * * * to give and execute a satisfaction piece to the extent of said payment, * * * on account of said judgment * * *." The $5,000 thus paid was charged to Policy No. CCL3948, issued to indemnify the corporation for liability resulting from the negligence of a subcontractor. Thereafter plaintiff commenced this action upon the direct liability Policy No. PC41223. The answer of the defendant denied the allegations of the complaint with respect to the legal effect of the judgment entered for the wrongful death of plaintiff's intestate.

As a first defense it is alleged that defendant is not liable on the policy by reason of the fact that the death of the decedent did not result from any acts and was not caused by the employees of the assured, but the occurrence resulted solely by reason of the work done by subcontractors. In the second defense it is alleged that the dismissal of the complaint against Philip M. Burkard was a binding adjudication; that there was no negligence on his part, and,

therefore, the death resulted from the primary negligence and carelessness of a subcontractor and not by reason of any negligence of an employee of the assured. The third defense alleges that the two policies above referred to were issued; that the coverage afforded by them was different but supplemental and that it was the intent of the policies that in the event of liability under one, liability under the other would be excluded; that, therefore, by reason of the payment of $5,000 under the CCL policy, the defendant had been discharged from any further liability. As a counterclaim it is alleged that the liability of the defendant to the assured was under any circumstances in the sum of $5,000 and that that sum was paid by mistake as to the liability of the defendant under the CCL policy and a refund of said sum is sought by reason of such mistake. Finally, there is a setoff wherein the facts alleged in the counterclaim are repeated and the defendant pleads that it be not directed to pay $5,000 twice since only one indemnity of $5,000 was contemplated.

It seems to me that the first issue to be determined here is whether the defendant is liable under the terms of the policy in suit. The defendant's principal contention in respect to this question is that the dismissal of the complaint against Philip M. Burkard, the sole representative of the assured at the place of construction, is a conclusive adjudication that the intestate's death was not caused by the negligence on the part of assured's employees. Since the policy in suit applies solely to injuries or death caused by the assured's own employees, there can be no recovery thereunder.

The stenographer's minutes of the trial of the death action do not, in my opinion, sustain this view. The trial court charged the jury that it had dismissed the complaint against Philip M. Burkard in his individual capacity " because it was the view of the court that whatever Philip M. Burkard did in this case, he did it in his capacity as an officer of the corporation Burkard Builders, Inc., and not in his individual capacity." By the jury's verdict against both of the remaining defendants, they became joint tort feasors and thereby it was established that both the building corporation and the subcontractor were negligent. While the building corporation's president and superintendent was not personally held liable, the corporation was nevertheless held liable for his act as an officer of the corporation in furnishing an unsafe scaffold. Thus the direct liability contemplated by the policy in suit came into existence inasmuch as Burkard Builders, Inc., through its own agent and employee, Philip M. Burkard, furnished the defective scaffold. But for that fact, there could not have been a judgment against the corporation.

As to the issue tendered by the defendant's third defense that the coverage afforded by both policies was different but supplemental and that it was the intention that liability under one would exclude liability under the other, I can find no proof whatsoever in the record of this trial to substantiate this view. Neither policy by its terms excluded liability under the other. After all, the policies were the handiwork of the defendant and any doubt must, under the circumstances here, be resolved against it. (See *McKenna* v. *Metropolitan Life Ins. Co.*, 220 App. Div. 53.) The defendant collected two premiums for two different risks, and it seems to me that the verdict of the jury established liability under both.

As already demonstrated, the direct liability under the policy in suit was created by the assured's furnishing a defective scaffold through the agency of its president acting for it; else no verdict against the corporation could have been rendered. The corporation also became liable indirectly because it contracted with the subcontractor Del Guidice to build the scaffold, and it is this scaffold which it furnished to plaintiff's intestate on which he worked. Inasmuch as the scaffold was built by the subcontractor, the defendant became liable to indemnify under the CCL policy " by reason of the negligence of any subcontractor." If the conclusions here reached are sound and the defendant became liable under both policies, then the payment of the $5,000 under the CCL policy would not discharge the obligation to pay the larger amount due under both policies, to wit, the liquidated amount of $10,000. Moreover, had it been the intention of the parties to effectuate an accord and satisfaction, the defendant would have requested and obtained a release for itself rather than the partial satisfaction of judgment. In any event, accord and satisfaction was not specifically pleaded in the answer, although some elements of proof upon the trial were relevant to the allegations of paragraph " XXI " of the answer wherein it is asserted that by reason of the payment the defendant had discharged itself of any liability to plaintiff under both policies. I cannot find, upon all of the evidence, that the $5,000 was paid to discharge defendant's liability under both policies. Even if it should be assumed that the payment of the CCL policy was made by mistake, there can be no recovery since it was a mistake of law. (*Payne* v. *Witherbee, Sherman & Co.*, 200 N. Y. 572, 576.) The payment was made voluntarily and there was no fraud committed.

As said by Mr. Justice WALTER in *New York Life Insurance Co.* v. *Guttenplan* (N. Y. L. J. Feb. 28, 1940, p. 917): " The courts of this State repeatedly have held that, at least in the absence of **fraud,** * * * an insurance company which executes its con-

tract of insurance by paying the amount specified therein cannot thereafter recover back such payment on the ground that it subsequently has discovered facts which would have justified it in withholding the payment. (*National Life Ins. Co.* v. *Minch*, 53 N. Y. 144, 151; *Smith* v. *Glens Falls Ins. Co.*, 62 N. Y. 85, 87; *Mutual Life Ins. Co.* v. *Wager*, 27 Barb. 354, 367, 368; *Northwestern Fire & Marine Ins. Co.* v. *Ley & Co., Inc.*, 238 App. Div. 255, affg. 149 Misc. 76, 79; *Fireman's Fund Ins. Co.* v. *Vinton*, 190 N. Y. Supp. 525.) "

Accordingly, judgment is granted to the plaintiff as prayed for in the complaint and the counterclaim and setoff of the defendant are dismissed.

All motions to strike out are denied with appropriate exceptions.