Howard A. Zeller, J.
In this action for declaratory judgment plaintiff moves for summary judgment. Defendant Cynthia S. Arnold concurs in plaintiff’s request. Plaintiff seeks, inter alia, a judgment declaring that a Jamestown Mutual Insurance Company policy of automobile liability insurance issued to Cynthia S. Arnold was in full force and effect on May 22, 1965 when an accident occurred. The only defendant opposing the motion is Jamestown Mutual Insurance Company. The material facts sworn to in the affidavits submitted in support of the motion are *591 not denied in the opposing affidavit by a person having actual knowledge of the circumstances. The statements in the opposing affidavit concerning what “ will appear upon the trial ” and regarding what is contained in writings in deponent’s possession must be disregarded. An opposing affidavit must contain evidentiary facts. (Shapiro v. Health Ins. Plan, 7 N Y 2d 56, 63; CPLR 3212, subd. [b].)
Jamestown Mutual Insurance Company issued an automobile liability policy to Cynthia S. Arnold as the named insured for a period from August 18, 1964 to August 18, 1965 applicable to a 1964 Ford Fairlane with serial number 4K43K 197964 which was registered in her name by the New York State Department of Motor Vehicles. The policy number is 64-FA160118. The Jamestown policy contains a provision insuring against loss from liability imposed by law both 1) the named insured (Cynthia S. Arnold) and 2) any other person using the motor vehicle with the permission of the named insured.
Cynthia S. Arnold renewed the 1964 Ford registration in January, 1965. Cynthia S. Arnold permitted her brother-inlaw, plaintiff Frederick L. Whaley, Jr., to operate the 1964 Ford Fairlane. On or about April 16, 1965 Whaley obtained an automobile liability insurance policy for a one-year period from Merchants Mutual Insurance Company naming him as the insured and listing the same 1964 Ford Fairlane as the vehicle primarily operated. Merchants notified the Department of Motor Vehicles on an FS-30 form that it had issued such policy to Whaley replacing a Jamestown policy number 64-FFA157258, in which Whaley had been the named insured. This previous insurance policy of Whaley’s with Jamestown listed a 1959 Ford as the covered vehicle.
On May 22,1965, Whaley was driving the 1964 Ford registered to Cynthia S. Arnold, with her permission, on Route 5 in Madison County when it collided with a motorcycle operated by defendant Mandell and owned by defendant McNally. At the time of the collison, Kathleen Elmer was a passenger on the motorcycle and sustained injuries resulting in her death. In August, 1965 an action for wrongful death was commenced by the estate of Kathleen Elmer against Mandell, McNally, Whaley and Cynthia S. Arnold. Jamestown was notified of this lawsuit. On September 1, 1965 Jamestown by a letter addressed to WFaley with a copy sent to Cynthia S. Arnold disclaimed coverage and refused to provide Whaley (and by implication Cynthia S. Arnold) with a defense, on the ground that the procurement of the Merchants policy by Whaley on April 16, 1965 then automatically terminated the coverage obtained by Cynthia S. Arnold from James *592 town on the 1964 Ford registered in her name. This letter of September 1 was the only notice to Cynthia S. Arnold of a.' claimed termination of the Jamestown policy issued to her.
The position of defendant Jamestown is that under the provisions of sections 313 and 347 of the Vehicle and Traffic Law there was an automatic termination of its policy issued to Cynthia S. Arnold effective on the date Whaley took out a Merchants Mutual policy listing the same vehicle and that no notice of termination was required to be given to her.
Section 313 deals in its first sentence with notices of termination required to be given to the “ named insured ” (italics supplied) by the insurer, “ provided, however, if another insurance contract has been procured, such other insurance contract shall * * * terminate the insurance previously certified with respect to any motor vehicles designated in both contracts.”
Section 347 imposes on the insurance carrier the duty of filing a notice of cancellation or termination with the office of the Commissioner except when a policy has been terminated by a subsequently procured policy on any motor vehicles designated in both policies.
The foregoing sections implement the clearly stated public policy “ that motorists .shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted.” (Vehicle and Traffic Law, § 310, subd. [2]. Subdivision 3 of section 311 further states that “ proof of ability to respond in damages for liability arising out of the ownership, maintenance or use of a motor vehicle * * * [shall be] evidenced by an owner’s policy of liability insurance ’ ’. Subdivision 1 of section 312 prohibits registration of a motor vehicle unless the applicant provides proof of financial security “ evidenced by a certificate of insurance ”, and requires that “ The owner of such motor vehicle * * * maintain proof of financial security continuously throughout the registration period.”
Read in relation to its immediately preceding sections, the purpose of section 313 requiring notice to the “ named insured ” of any termination of coverage unless a substituting policy has been procured is to prevent the registered owner under an' owner’s policy of insurance, and as the “ named insured ”, from unwittingly running afoul of the continuing insurance requirements of section 312 in violation of established public policy. The point of section 312 is notice to the registered owner of the statutorily imposed need to keep the registered vehicle insured.
To the same ends of public policy and purposes, section 347 *593 is designated to protect an insured registered owner from being stripped without notice of requisite coverage by the unilateral acts of the insurer. (See Connecticut Fire Ins. Co. v. Williams, 9 A D 2d 461.)
Also pertinent is the determination that " Shuba v. Greendonner (271 N. Y. 189) establishes the public policy of this State and that ownership (of a vehicle) is conclusively in a registered owner for all purposes concerning such ownership.” (Ward, J., in Merchants Ins. Co. v. Factory Ins. Co., 52 Misc 2d 510, 514.)
Where pertinent, article 6 of the Vehicle and Traffic Law also distinguishes between an owner’s policy of public liability insurance and an operator’s or nonowner’s policy of public liability insurance. (See, e.g., Vehicle and Traffic Law, § 318, subd. 8; § 319.) Here, we are dealing with a claimed termination of the liability policy of a registered owner, upon whom the provisions of article 6 impose far the heaviest burden of responsibilities and duties. No such burdens are found concerning the holder of an operator’s or nonowner’,s liability policy. One cannot find in article 6 any requirements concerning continual maintenance of an operator’s policy, or sanctions or duties imposed on the holder of an operator’s or nonowner’s policy regarding its termination.
To review the facts, a registered owner of a vehicle procured an owner’s liability policy with Jamestown in compliance with the requirements of article 6 of the Vehicle and Traffic Law. A permissive user of the same vehicle procures a liability policy on the same auto with Merchants and attempts to cancel his own prior owner’s policy with Jamestown on an entirely different vehicle.
It is unrefuted that Mrs. Arnold had no knowledge of Mr. Whaley’s purchase of his policy. Nor is it refuted that Mr. Whaley attempted to replace only a prior policy of his own.
Under Jamestown’s interpretation of the sections of article 6 as they pertain to these facts, the entire point, purpose and public policy enunciated in article 6 can be thwarted and rendered a nullity. Jamestown contends that the issuance to a non-owner of a policy listing a vehicle registered to and insured by the registered owner automatically cancels the registered owner’s insurance without notice. Under this interpretation, the purchaser of an operator’s policy, upon whom is imposed no continuity of maintenance and no sanctions on termination of it, can substantially alter or terminate without any notice the liability of a registered owner, who is under a strict statutory duty regarding maintenance of coverage and strict sanctions governing the termination of that owner’s policy.
*594 The Legislature in enacting article 6 certainly intended no such result. While a more fulsome spelling out might be desired, there is nevertheless found in the article the legislative intent to require and protect the continuity of liability insurance coverage of a registered owner and to prevent termination thereof unless upon notice to that registered owner by virtue either of his own acts or those required of the insurer under the statutes.
The language in Teeter v. Allstate Ins. Co. (9 A D 2d 176,181) is worthy of note: ‘ ‘ Once a certificate of insurance * * * has been issued by the insurance company and filed with the Commissioner, the contract of insurance ceases to be a private contract between the parties. A supervening public interest then attaches and restricts the rights of the parties in-accordance with the statutory provisions.”
That there may be a resultant double, excess or additional coverage in these or similar circumstances has never appeared objectionable. (See, e. g., Downing v. Allstate Ins. Co., 43 Misc 2d 215; Empire Hut. Ins. Co. v. Liberty Ins. Co., 21 Misc 2d 1050 ; and, see, Merchants Ins. Co. v. Factory Ins. Co., 52 Misc 2d 510, 514-515.) In fact, nothing more nor less occurs whenever one insured owner drives the' vehicle of another insured owner with permission.
Plaintiff’s motion for summary judgment in this action for declaratory judgment should be granted. No motion costs or taxable costs are awarded.