OPINION OF THE COURT
Beatrice S. Burstein, J.
This declaratory judgment action raises an issue of apparent *964 first impression in this State. Can an insured combine or "stack” the liability coverage provided in two separate policies issued to the same insured by the same insurer, when the insurer insisted upon two policies rather than one? Based upon the following analysis, the court concludes the insurer must provide the coverage available under each policy.
Plaintiff was allegedly injured while a passenger in a vehicle owned by defendant Britt-Morgillo (the insured). That vehicle was insured by defendant Allstate Insurance Company (the insurer). Plaintiff has commenced a personal injury action against the insured. Defendant insurer admits that the insured is covered by one of its policies of insurance and has offered the full policy in settlement of the personal injury action. Plaintiff contends the insured also is covered by another of the insurer’s policies. She has commenced this declaratory action to establish the extent of the insured’s coverage.
By prior order dated August 7, 1987 this court directed that the insured be joined as a party to this action. This having been done, and the insured having been provided with an opportunity to consider the issues raised, the court now turns its attention to plaintiff’s motion for an order dismissing the insurer’s affirmative defense and granting her summary judgment, and the insurer’s cross motion for judgment dismissing this action.
The following facts are not controverted. Sometime prior to the accident at issue the insured purchased a 1961 Buick upon which the insurer issued a policy (hereinafter referred to as the 1961 policy). Thereafter, the insured purchased a 1957 Buick. He requested coverage for the 1957 Buick from the insurer. The insurer advised him that it required that the 1957 Buick be insured under a separate policy.[1] The insured paid a separate premium for that policy (hereinafter referred to as the 1957 policy). Because the insurer required the insured to obtain two separate policies he was deemed not eligible for the two-car discount on either policy. The declarations page of each policy does not name the other automobile. Plaintiff was in an accident while a passenger in the 1957 Buick, which was being operated by the insured at the time.
*965 As relevant, each policy provides for personal injury liability coverage limited to $50,000 per person. Plaintiff contends the insured is obligated to make available the $50,000 coverage from each of these policies, for a total of $100,000. As an affirmative defense the insurer asserts that the terms of each policy confine the available insurance to the $50,000 coverage provided by the 1957 policy.
Pursuant to article 6 of the Vehicle and Traffic Law (commonly known as the Motor Vehicle Financial Security Act) the insured was required to carry insurance on each of his automobiles. As a result of an individual’s complying with the Motor Vehicle Financial Security Act, sometimes double, excess or additional insurance may arise. That result has not been held to be objectionable. (See, e.g., Empire Mut. Ins. Co. v Liberty Ins. Co., 21 Misc 2d 1050 [App Term, 1st Dept 1959]; Whaley v Jamestown Mut. Ins. Co., 53 Misc 2d 590 [Sup Ct, Madison County 1967]; Downing v Allstate Ins. Co., 43 Misc 2d 215 [Sup Ct, Onondaga County 1964].) In contrast to past rules, an insured may now be covered for the same loss by more than one liability policy. (8A Appleman, Insurance Law and Practice § 4907.35.) In fact the court in Whaley (supra, at 594) noted that nothing more or less occurs whenever one insured owner drives the vehicle of another insured owner with permission.
Accordingly, the first question to be resolved is whether the 1957 policy, which the insurer admits applies, prohibits the insured from having any other applicable coverage. Quite the contrary. In providing for a prorating of losses the 1957 policy reflects that the insurer contemplated that coverage might be afforded by another policy. The 1957 policy states, at page 9:

"If There is Other Insurance

"If an insured person is using a substitute private passenger auto or non-owned auto, our liability insurance will be excess over other collectible insurance. If more than one policy applies to an accident involving your insured auto, we will bear our proportionate share with other collectible liability insurance.” (Emphasis as in original.)
As the insurer correctly argues, the first sentence of this clause does not apply in this case because the insured was not driving either a substitute or a nonowned automobile.
The second sentence, however, clearly does demonstrate the insurer intended that another policy could apply, and if so, the insurer’s liability would be prorated. The insurer errone *966 ously argues that the second sentence is limited "to a situation where any person not a named insured or an additional insured used the insured vehicle” or "where an insured vehicle is operated with the permission and consent of the insured”. The flaw in this argument is that the clause simply does not state this. As the clause is clear and unambiguous, it must be given its plain and ordinary meaning. (United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229 [1986].) That does not include the construction advanced by the insurer. Furthermore, as the insurer seeks to interpret this clause as exclusionary, the court also has considered whether other possible policy provisions support the insurer’s aforesaid interpretation. (Jewtraw v Hartford Acc. & Indem. Co., 280 App Div 150, 152 [3d Dept 1952].) Here there are none. Consequently, the insurer has not met its burden, namely, showing that its construction of the second sentence is the only one that fairly could be placed upon the policy. (Sincoff v Liberty Mut. Fire Ins. Co., 11 NY2d 386, 390 [1962].) Therefore, the court finds the insurer intended other applicable insurance to apply.
Consequently, the court turns its attention now to the question of whether the 1961 policy does provide coverage. Among the policy definitions of "Insured Autos” is a clause which provides for automatic coverage on newly acquired automobiles, provided certain conditions are met. An insured automobile includes "An additional four wheel private passenger auto * * * you become the owner of during the premium period. This auto will be covered if we insure all other private passenger autos you own. You must, however, tell us within 60 days of acquiring the auto. You must pay any additional premiums.” (Emphasis as in original.) In this case the insured had met all the conditions required of him. The 1957 Buick is a four-wheel private passenger automobile which the insured acquired during the period when the 1961 policy was in full force and effect. All of the insured’s private passenger automobiles were insured by the insurer, and the insured gave the insurer timely notice he had acquired the 1957 Buick. The insured paid all premiums requested of him, including a premium on the 1957 policy.
This automatic coverage for a newly acquired vehicle may have entitled the insurer to a premium adjustment on the 1961 policy. It certainly provided the insurer with an opportunity to modify its 1961 policy. However, despite notice, the insurer did not request any additional premium, or modify its *967 policy. Instead, it directed the insured to purchase a separate policy to cover the newly acquired vehicle. This deprived the insured of an otherwise available two-car discount. Therefore, in effect, the insurer received a greater premium than it otherwise would have. Furthermore, the premium on the 1961 policy may have been computed to reflect the possible subsequently acquired automobile.
In any event, requiring the insured to purchase an additional policy did not alter the terms of the 1961 policy already in existence, which provided coverage for a newly acquired vehicle. This court will not attempt to find a hidden meaning or an unexpressed intention in the cited clause in order to relieve the insurer of a liability it unambiguously assumed. Rather, the clause must be given its plain and ordinary meaning. (United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229, supra.) If the insurer intended to cover newly acquired automobiles only so long as no specific insurance was purchased to cover them, it could and should have stated this expressly. For example, the policy at issue in Bramlett v State Farm Mut. Auto. Ins. Co. (205 Kan 128, 130, 468 P2d 157, 159 [1970]) provided "If more than one policy issued by the [insurer] could be applied to [a newly acquired] automobile the named insured shall elect which policy shall apply.” Absent a specific provision such as the aforesaid, providing for an election of coverage or terminating automatic coverage, the insurer is bound by its agreement, even though there is another policy specifically covering the newly acquired automobile. While there are no determinations on point in this State, decisions in other jurisdictions support this conclusion and distinction. (Compare, Carey v State Farm Mut. Ins. Co., 367 F2d 938 [4th Cir 1966], and Gorling v Allstate Ins. Co., 125 Ga App 497, 188 SE2d 128 [1972] [each case holding that newly acquired vehicle is covered by automatic insurance clause in policy naming another vehicle, as well as by policy specifically purchased to cover newly acquired vehicle], and St. Paul Mercury Ins. Co. v Pennsylvania Lumbermen’s Mut. Ins. Co., 378 F2d 312 [4th Cir 1967] [holding that newly acquired automobile coverage applies to vehicle along with specific policy covering newly acquired vehicle where automatic insurance clause calls for election between policies but period within which to elect had not expired], with Beck v Aetna Cas. & Sur. Co., 38 Col App 77, 553 P2d 397, and Bramlett v State Farm Mut. Auto. Ins. Co., 205 Kan 128, 468 P2d 157 [1970], supra [each case holding that automatic cover *968 age does not apply to newly acquired vehicle where automatic coverage clause required an election and insured had elected coverage under another policy naming the newly acquired vehicle].) Accordingly, I find the insurer is obligated to provide coverage under both the 1961 policy and the 1957 policy. Of course, even though both policies apply, the insured is entitled to only one satisfaction for the loss actually incurred by reason of his liability for damages plaintiff sustained. (8A Appleman, Insurance Law and Practice § 4907.35 [1981].)
The insurer’s reliance upon two other clauses appearing in both policies is misplaced. One of these is entitled "Combining Limits of Two or More Autos Prohibited”. Notably, the title does not state that the clause prohibits the combining of two or more policies nor does it refer to combining of policies on the automobile. The clause itself describes two sets of circumstances depending upon whether the vehicle at issue was or was not involved in the accident in question. The latter is irrelevant to this action. As to the former, the clause provides: "If you have two or more autos insured in your name and one of these autos is involved in an accident, only the coverage limits shown on the declaration page for that auto will apply * * * The limits available for any other auto covered by the policy will not be added to the coverage for the involved auto. ” (Emphasis in original.) This clause prohibits the combining or "stacking” of liability coverage limits on different automobiles covered under a single policy. This follows well-settled law. (See, Polland v Allstate Ins. Co., 25 AD2d 16 [3d Dept 1966]; Hendrickson v Cumpton, 654 SW2d 332 [Mo App 1983]; Annotation, Limitation of Amount of Coverage under Automobile Liability Policy as Affected by Fact that Policy Covers More Than One Vehicle, 37 ALR3d 1263 [1971].)[2] Plaintiff however is not attempting to stack coverage from different automobiles under one policy. She is seeking to combine or "stack” the coverage provided on the same automobile in each of two separate policies. The clause is silent on this issue. The reference in the second-quoted policy sentence to "any other auto covered by the policy” (emphasis supplied) confines the *969 clause to automobiles insured under the same policy. To read this clause broadly as referring to the aggregation of coverage on the same automobile from more than one policy when the clause does not even refer to other policies would require the court to rewrite the clause, which is impermissible. (Government Employees Ins. Co. v Kligler, 42 NY2d 863 [1977].)
The second clause upon which respondent relies is also unavailing. It states, in relevant part:

"Limits of Liability

"The limits shown on the declarations page are the maximum we will pay for any single auto accident. The limit stated for each person for bodily injury applies to all damages arising from bodily injury, sickness, disease, or death sustained by one person in any one occurrence.
"The liability limits apply to each insured auto as shown on the declarations page. The insuring of more than one person or auto under this policy will not increase our liability limits beyond the amount shown for any one auto, even though a separate premium is charged for each auto. The limits also won’t be increased if you have other auto insurance policies that apply.” (Emphasis as in original.)
The clause is unambiguous. Therefore, its plain and commonsense meaning is the one to be employed. (United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229, supra.) The clause does no more than set forth the máximums to be paid under the policy in various circumstances. It states that the limits of the policy will not be increased if there is other available insurance. However, it does not state that the coverage provided by the policy will not be available if there is other insurance. The fact that each policy states the same thing is irrelevant. Neither policy specifically refers to the other policy or to the vehicle declared in the other policy. The fact that the defendant insurer happened to issue both policies does not change the result. The two policies must be read independently.
An automatic insurance clause covering a newly acquired vehicle can contain a clause which provides that the policy does not apply to any loss against which the named insured has other collectible and valid insurance. (12 Couch, Insurance § 45:182 [2d ed]; see, 8A Appleman, Insurance Law and Practice § 4891.45; see, e.g., Dolan v Welch, 123 Ill App 3d 277, 462 NE2d 794 [1984].) However, when an insurer issues two poli *970 cies covering similar liability to an insured, if it intends that in the event of liability under one of them liability under the other would be excluded, the face of the policy should indicate that recovery under one excludes recovery under the other. Absent such indication, recovery can be had under both policies. (Eifert v United States Fid. & Guar. Co., 177 Misc 516, affd 261 App Div 1081, affd 287 NY 639 [1941].) The clauses relied upon by the insurer contain no exclusion. Therefore, as set forth above, the insured can recover under both.
The cases cited by the insured do not compel a different conclusion. Zappone v Home Ins. Co. (55 NY2d 131 [1982]) deals with a situation in which there was no question that the liability incurred was neither by the person insured by the policy at issue nor in the vehicle insured by that policy. Here the liability was incurred by the person insured under both policies, and the vehicle insured under at least one of these. Therefore, Zappone does not resolve or offer guidance on the issue before this court.
The insurer also relies upon Government Employees Ins. Co. v Kligler (42 NY2d 863 [1977], supra). The issue resolved therein, in the negative, was whether a particular vehicle could qualify as a "temporary substitute automobile” or a "non-owned vehicle” under a policy providing coverage for a different vehicle, when the owner of the particular vehicle was a named insured under that policy. The determination does not in any way deal with the coverage to be afforded a newly acquired vehicle. Therefore, it too does not apply to the case at hand.
In times past insureds were limited from obtaining double coverage when a policy clearly provided that it would be void if additional insurance existed or was procured. The rationale was that such overinsurance could encourage intentional acts of harm. It is no longer applied. (8A Appleman, Insurance Law and Practice § 4907.) In any event, the 1957 and the 1961 policies address the insurer’s concern with that possibility. Each policy specifically excludes coverage for "bodily injury or property damage caused intentionally by or at the direction of an insured person.” No such claim exists here.
Based upon all of the aforesaid, plaintiff is granted judgment declaring that the two policies issued by defendant *971 Allstate Insurance Company to Steven Britt-Morgillo, numbered 043 057 120 and 043 376 671, both provide coverage for the personal injuries allegedly sustained by plaintiff when she was a passenger in a 1957 Buick being driven by defendant Britt-Morgillo on December 5, 1984. Pursuant to their terms, recovery under each policy is to be prorated.

. Counsel for the insured affirms "that Mr. Britt-Morgillo chose to insure under two (2) separate policies”. However, as that statement is not based upon personal information, it is insufficient to controvert defendant Britt-Morgillo’s affidavit, which specifically states that the "company” (by a named agent) required him to purchase a separate policy.

. In contrast to the prohibition against the stacking of liability coverage limits under one policy, courts have permitted the stacking of medical payments coverage under one policy. (See, e.g., Allstate Ins. Co. v Leviss, 71 Misc 2d 628 [Sup Ct, Queens County 1972]; Annotation, Combining or "Stacking” Medical Payment Provisions of Automobile Liability Policy or Policies Issued by One or More Insurers to One Insured, 29 ALR4th 49 [1984].) The policy at issue specifically prohibits such stacking.