618 S.E.2d 483

Jessica SATTERFIELD, Plaintiff
Below, Appellant,

v.

ERIE INSURANCE PROPERTY AND
CASUALTY, Defendant Below,
Appellee.

No. 32511.

Supreme Court of Appeals of West Virginia.

Submitted: June 15, 2005.

Filed: June 30, 2005.

Patrick E. McFarland, Patrick E. McFarland, P.L.L.C., Parkersburg, for the Appellant.

George M. Torres, Parkersburg, for the Appellee.

Chief Justice ALBRIGHT delivered the Opinion of the Court.

ALBRIGHT, Chief Justice.

Jessica Satterfield appeals from the March 3, 2004, order of the Circuit Court of Pleasants County granting summary judgment to Appellee Erie Insurance Property and Casualty Company ("Erie") in connection with an issue of coverage that involves the "newly acquired auto clause" in a commercial auto policy. Based on the fact that the insured, Dale Williamson, had contacted Erie prior to the accident that resulted in injuries to Ms. Satterfield for the purpose of including the insured vehicle under Mr. Williamson's family auto policy, the trial court concluded that the coverage extended by the "newly acquired auto clause" in Mr. Williams' commercial auto policy was no longer applicable. Upon our review of this issue in conjunction with a careful review of the policy language and case law from other jurisdictions, we conclude that the unambiguous language of the commercial auto policy fails to exclude coverage under the "newly acquired auto clause" upon the occurrence of the inclusion of a new vehicle on a separate policy issued by Appellee Erie. Given the lack of ambiguity in the policy terms at issue, we are required to apply the policy language as written without interpretation. Accordingly, we determine that the commercial policy at issue provides coverage under the "newly acquired

auto clause" and reverse the decision of the circuit court.

## I. Factual and Procedural Background

On September 15, 1999, Rosanna R. Williamson and her father, Dale, purchased a 1993 Pontiac Grand Am SE. Mr. Williamson added the vehicle to his family auto insurance policy with Erie on September 20, 1999. While operating the subject vehicle on October 7, 1999, Ms. Williamson lost control and the resulting single-vehicle accident caused serious injuries to the passenger, Ms. Satterfield.[1]

Following a judgment that Ms. Satterfield obtained against Ms. Williamson and her parents, Erie paid the $100,000 policy limits to Ms. Satterfield under the family auto policy issued to Mr. Williamson. In addition to the proceeds provided by that policy, Ms. Satterfield sought an additional $100,000 from a commercial auto policy issued by Erie that Mr. Williamson had in effect at the time of the accident. Through the underlying declaratory judgment action, Ms. Satterfield sought a ruling requiring Erie to pay the policy limits under Mr. Williamson's commercial auto policy based on the "newly acquired auto clause"[2] in that policy.

In response to summary judgment motions filed by both Erie and Ms. Satterfield on the issue of coverage, the trial court granted Erie's motion based on its determination that Mr. Williamson specifically contracted with Erie for coverage of the subject vehicle under the family auto policy. The trial court opined that had Mr. Williamson not yet identified the newly acquired vehicle for coverage under the family auto policy, the coverage in question under the commercial policy "in all probability" would have been applicable. "[O]nce the subject vehicle was listed on the declarations sheet of another policy," the trial court reasoned that the vehicle "ceased to be a newly acquired auto for the purposes of the Commercial Policy." Through this appeal, Ms. Satterfield seeks a reversal of the trial court's ruling finding no coverage avail-

---

1. Ms. Satterfield underwent multiple surgeries and incurred $95, 949.81 in medical expenses.

2. This clause extends coverage to vehicles that the insured acquires that are replacement vehi-

cles for other insured vehicles or additional vehicles if all other vehicles owned by the insured are insured by Erie and if the insured notifies Erie of the acquisition(s) during the policy period.

able to her under the commercial auto policy issued by Erie.

## II. Standard of Review

 Our standard of review is well established: "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). That same plenary standard applies to declaratory judgments. *See* Syl. Pt. 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995) ("A circuit court's entry of a declaratory judgment is reviewed *de novo.*"). We proceed to determine whether the circuit court committed error in finding that the policy limits under the commercial auto policy issued to Mr. Williamson were unavailable to Ms. Satterfield.

## III. Discussion

The Erie policy language provides that the insurer "will pay all sums anyone we protect legally must pay as damages caused by an accident covered by this policy" provided that "[t]he accident . . . arise[s] out of the ownership, maintenance, use, loading or unloading of an auto we insure." The policy includes a "newly acquired auto clause" that expressly extends coverage to "autos you acquired during the policy period." [3] The only condition imposed in connection with extending coverage to such vehicles is that the insured "tell . . . [Erie] about newly acquired autos during the policy period in which the acquisition takes place."

Ms. Satterfield argues that there is no question that the subject vehicle qualified as an insured vehicle under the language of the commercial auto policy based on the clear policy language that extends coverage to newly acquired vehicles during the policy period where all the vehicles an insured owns are insured by Erie.[4] Moreover, there is no dispute that Mr. Williamson met the policy

3. The term "newly acquired autos" includes both autos that are purchased to "replace an owned auto," or "additional autos we insure if, on the day such autos are acquired, we insure all autos you own."

4. *See supra* note 3.

5. That clause provided coverage for:
 (c) a private passenger, farm or utility automobile ownership of any of which is acquired by·

requirement of notifying Erie during the subject policy period regarding the purchase of this particular vehicle.

In response to the contentions raised by Ms. Satterfield, Erie maintains that once the "newly acquired vehicle" was expressly included in the family policy, it lost its status as a "newly acquired vehicle" under the commercial policy. Consequently, Erie contends that the Appellant is barred from collecting proceeds under the commercial policy. To find otherwise, Erie argues, would require a "modification and re-interpretation of the insuring contract."

While the courts of this state have never addressed whether the specific identification of a newly purchased vehicle on the declarations sheet of one insurance policy precludes coverage for the newly acquired vehicle under a separate policy held by the insured with the same insurer, the issue has been addressed by courts in other jurisdictions. In *Carey v. State Farm Mutual Insurance Co.,* 367 F.2d 938 (4th Cir.1966), the Fourth Circuit Court of Appeals was asked to decide whether a second policy, a family automobile policy, provided coverage in addition to the individual policy issued on the subject vehicle. The insurer in *Carey* argued that when the additional specific insurance was purchased on the subject vehicle, the insured was electing to insure the vehicle solely under the individual policy and to waive any insurance available under the "owned automobile" clause of the family policy.[5] *Id.* at 941.

In finding in favor of the insured, the Fourth Circuit reasoned:

> We agree with the District Court in its holding that the Chevrolet was insured under the family policy as an after-acquired automobile. The insurer is bound by the express terms of its contract of the named insured during the policy period, provided * * * (2) the company insures all private passenger automobiles, farm automobiles and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days following such date * * *.

*Carey,* 367 F.2d at 940–41.

insurance. When those terms, taken in their ordinary sense, convey a clear and unambiguous meaning, a court cannot indulge in ferreting out hidden meanings or unexpressed intentions to relieve the insurer of liabilities assumed in the policy. When ambiguities arise, the intent of the parties is controlling; but if any doubt remained it would, under the familiar rule, be resolved in favor of the insured since the insurer formulated the language in the policy....

However, we find no ambiguity. The defendant, in clause (c)(2), expressly undertook to insure all after-acquired private passenger vehicles of the insured, provided that notice of the acquisition is given within 30 days. Virgil Foster [insured] gave the requisite notice.... The defendant's position that his notice operated either as a waiver or counter-offer is untenable.... It would be unreasonable to ascribe to Virgil Foster an intention to waive any additional protection to which he was entitled or to reject it by applying for specific insurance on the Chevrolet. *If the defendant intended to insure the newly acquired automobiles only as long as no specific insurance was taken out to cover them, it could have stated this expressly.* If, as defendant suggests, it is anomalous to have two policies covering the same automobile, specific language obviating this could have been included in the family policy. Indeed, the simple omission of the provision in question would have avoided all question. The provision means what it says.

367 F.2d at 941–42 (citation and footnote omitted and emphasis supplied).

Other courts have similarly found determinative the absence of policy language that either requires the insured to elect a specific policy under which coverage is being sought or simply terminates the automatic coverage where a vehicle is specifically named on the declarations sheet of one of multiple policies. Finding in favor of coverage where neither an election or termination provision was in-

cluded, the New York Supreme Court reasoned in *Goodman v. Allstate Insurance Co.,* 137 Misc.2d 963, 523 N.Y.S.2d 391 (N.Y.Sup. 1987):

> [R]equiring the insured to purchase an additional policy did not alter the terms of the 1961 policy already in existence, which provided coverage for a newly-acquired vehicle. This Court will not attempt to find hidden meaning or an unexpressed intention in the cited clause [6] in order to relieve the insurer of liability it unambiguously assumed. Rather, the clause must be given its plain and ordinary meaning... If the insurer intended to cover newly-acquired automobiles only so long as no specific insurance was purchased to cover them, it could and should have stated this expressly. For example, the policy at issue in *Bramlett v. State Farm Mutual Automobile Ins. Co.,* 205 Kan. 128, 130, 468 P.2d 157, 159 (1970), provided "If more than one policy issued by the [insurer] could be applied to [a newly-acquired] automobile the named insured shall elect which policy shall apply." *Absent a specific provision such as the aforesaid, providing for an election of coverage or terminating automatic coverage, the insurer is bound by its agreement, even though there is another policy specifically covering the newly-acquired automobile.*

523 N.Y.S.2d at 394 (citation omitted, footnote added, and emphasis supplied); *accord Key v. Allstate Ins. Co.,* 90 F.3d 1546, 1549 (11th Cir.1996) (rejecting insurer's argument that parties' intentions or purposes of provision control, holding instead that unambiguous newly-acquired vehicle provision required coverage where policy language failed to limit coverage upon procurement of additional specific insurance); *Gorling v. Allstate Ins. Co.,* 125 Ga.App. 497, 188 S.E.2d 128, 131–32 (1972) (finding that newly-acquired vehicle is covered by automatic insurance clause in policy naming another vehicle in addition to policy that specifically named the newly-acquired vehicle).

---

**6.** The policy included coverage for newly-acquired vehicles based on the following policy language describing insured vehicles as: "An additional four wheel passenger auto ... you become the owner of during the premium period.

This auto will be covered if we insure all other private passenger autos you own. You must, however, tell us within 60 days of acquiring the auto. You must pay any additional premiums." 523 N.Y.S.2d at 393.

As support for its position, Erie cites decisions in which courts have looked to either the intent of the parties or the objective of the newly-acquired automobile clause as a basis for denying coverage. Erie argues that the objective underlying the provision of automatic insurance coverage for newly-acquired vehicles—the temporary provision of coverage pending specific named inclusion in a policy—is essentially mooted by the named addition of a vehicle to a particular policy's declaration sheet. This precept was recognized in *Bramlett v. State Farm Mutual Automobile Insurance Co.*, 205 Kan. 128, 468 P.2d 157 (1970), when the Kansas court opined:

> The purpose of the "automatic insurance clause" or "newly acquired automobile clause" in an automobile policy is to provide coverage when an owned automobile is not described in a policy. When specific insurance is purchased and a separate policy is issued on the automobile it becomes an automobile described in a new policy and it is no longer a "newly acquired automobile". At that time the terms and provisions of the "automatic insurance clause" or "newly acquired automobile clause" are no longer applicable to the automobile.

*Id.* at 160.

In choosing the approach adopted by the Fourth Circuit in *Carey* over the analysis used by the court in *Bramlett*, the Supreme Court of Montana in *Christensen v. Mountain West Farm Bureau Mutual Insurance Co.*, 303 Mont. 493, 22 P.3d 624 (2000), focused on the fact that the language at issue was more similar to that at issue in *Carey*, than to the policy language under scrutiny in *Bramlett*.

We conclude that the reasoning in *Carey* is more persuasive than the reasoning in *Bramlett* for two reasons. First, the "after acquired vehicle" clause interpreted in *Carey* was similar to the clause at issue in this case *and did not include the additional provision requiring the insured to elect coverage which was included in the clause interpreted in Bramlett.* Second, the *Carey* decision, which is based on the plain terms of the contract language rather than the "unexpressed intentions" is more consistent with our own decisional law which requires that:

> While an insurer may limit its liability in this area, the limiting language must be clear and unambiguous.... It is the rule of construction in Montana that language of limitation or exclusion must be clear and unequivocal; otherwise, the policy will be strictly construed in favor of the insured.

22 P.2d at 628 (citations omitted and emphasis supplied).

■ Like the court in *Christensen*, we are inclined to view the *Carey* approach to this issue as more compelling than the position adopted by the court in *Bramlett*. Of significance to the Fourth Circuit was the fact that the policy on its face plainly provided for coverage for additional vehicles acquired during the policy period. That fact combined with the insurer's failure to include language that expressly terminated coverage or required an election between policies upon the adding of a vehicle to a particular policy convinced the Fourth Circuit that coverage should be available in instances such as those presented by the case *sub judice*. We agree.

■ West Virginia, like Montana, requires that exclusions of coverage must be stated in clear and unambiguous fashion. "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." Syl. Pt. 10, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co.*, 202 W.Va. 308, 504 S.E.2d 135 (1998). Unlike the *Bramlett* case, the Erie policy at issue does not contain language requiring the insured to elect between policies for coverage purposes where coverage from more than one policy could apply. Neither does the Erie policy have language such as that found in another case relied upon by Erie which limits coverage for newly acquired vehicles to those instances where "no other insurance policy provides coverage for that vehicle." *Has-*

*tings Mutual Insurance Co. v. Clyne,* 87 Ohio App.3d 198, 621 N.E.2d 1355, 1358 (1993).

■ It has long been the rule in this state that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 172 S.E.2d 714 (1970). Erie suggests that to find coverage for Ms. Satterfield, we must interpret or modify the policy language to read language into the policy that does not exist. The exact opposite is true. Because Erie did not take it upon itself to include language in the subject commercial auto policy that discontinues coverage concomitant with the inclusion of a named vehicle on another policy the insured holds with it or requires the insured to make an election as to which one of multiple policies it seeks coverage under, no interpretation of the policy is required to conclude that coverage exists under the facts presented by this case. This is because the policy—on its face—clearly provides coverage under the "newly acquired auto clause." *See* Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.,* 176 W.Va. 430, 345 S.E.2d 33 (1986) ("Language in an insurance policy should be given its plain, ordinary meaning"). Moreover, given the absence of any ambiguity in the policy language, there is simply no basis for engaging in policy interpretation. *See Keffer,* 153 W.Va. at 813, 172 S.E.2d at 714, syllabus. As the Fourth Circuit simply, but aptly, stated: "The provision means what it says." *Carey,* 367 F.2d at 942.

Accordingly, we hold that where an insured who holds more than one automotive insurance policy with the same insurer acquires an additional vehicle, the named inclusion of the additional vehicle on one insurance policy does not operate to remove coverage extended by the "newly acquired auto clause" in a separate policy, barring language that expressly terminates coverage in such circumstance or requires the insured to make an election as to the specific policy under which coverage is sought.

Based on the foregoing, the decision of the Circuit Court of Pleasants County is hereby reversed.

Reversed.