940 A.2d 329

**Victor M. SACKETT and Diana L. Sackett, Appellants,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Resubmitted Oct. 16, 2007.

Decided Dec. 27, 2007.

Terrance A. Keating, Esq., Jodi A. Frantz, Esq., PA Department of Insurance, Arthur F. McNulty, Esq., Insurance Department, Office of Chief Counsel, for amicus curiae Pennsylvania Insurance Department and Insurance Commissioner.

Scott B. Cooper, Esq., Schmidt Kramer, P.C., Harrisburg, Ronald James Bergman, Esq., Nedwick & Bergman, Greensburg, for Victor M. Sackett, et al.

John W. Pollins, III, Esq., Greensburg, for amicus curiae Pennsylvania Trial Lawyers Association.

James C. Haggerty, Esq., Swartz Campbell, L.L.C., Philadelphia, Peter B. Skeel, Esq., Summers, McDonnell, Hudock, Guthrie & Skeel, L.L.P., Pittsburgh, for Nationwide Mutual Insurance Company.

Teresa Ficken Sachs, Esq., Post & Schell, P.C., Philadelphia, for amicus curiae Pa. Defense Institute, Insurance Federation of Pa. and Property Casualty Insurers Assoc.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

*OPINION*

Justice SAYLOR.

In April 2007, this Court issued its opinion in the above matter, implementing a plain-meaning approach to Section 1738(c) of the Motor Vehicle Financial Responsibility Law (the "MVFRL"). *See Sackett v. Nationwide Mut. Ins. Co.*, 591 Pa. 416, 919 A.2d 194 (2007) (*"Sackett I "*). Section 1738 concerns the stacking of uninsured and underinsured motorist insurance ("UM/UIM") coverage and the waiver of stacked coverage. *See* 75 Pa.C.S. § 1738. *Sackett I* held that, even where stacked coverage has been previously waived under Section 1738(b) via the execution of a valid waiver form as contemplated by Section 1738(d), upon the addition of a new vehicle to a multi-vehicle automobile insurance policy, the carrier must secure a new signed waiver form on pain of a default to stacked UM/UIM limits. *See id.* at 427–29, 919 A.2d at 201–02. This interpretation was grounded on Section 1738(c)'s proviso that "[e]ach named insured *purchasing* uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage," 75 Pa.C.S. § 1738(c) (emphasis added), and the understanding that the addition of a vehicle to an existing multi-vehicle policy constitutes a new purchase of insurance coverage. *See Sackett I,* 591 Pa. at 427–29, 919 A.2d at 201–02. Mr. Justice Castille authored a dissent, joined by Mr. Justice Eakin, maintaining, *inter alia,* that such an addition is not a new purchase of coverage. *See id.* at 434, 919 A.2d at 205 (Castille, J., dissenting) ("[A]ppellants did not

purchase a new policy, but simply added a vehicle to an existing policy. The same policy appellants purchased in 1998 remained in effect, and the original waiver of stacking was part of that policy."). ;

Nationwide Mutual Insurance Company, which was the appellee, filed an application for reargument. While the application was under consideration, this Court invited the Insurance Commissioner, the cabinet-level official charged with the administration and enforcement of the MVFRL, to file an *amicus* statement. In response, the Commissioner filed a statement supporting reargument. The Court then granted Nationwide's application, permitted the respondents to file an additional responsive submission, and took the matter under advisement on a submitted basis. Madame Justice Baldwin dissented, taking the position that reargument was unwarranted under the applicable Rule of Appellate Procedure.

In his statement, the Insurance Commissioner offers his respectful disagreement with *Sackett I's* central conclusion that that the addition of a new vehicle to an existing multi-vehicle policy unambiguously constitutes a new purchase of coverage. The Commissioner observes that the Insurance Department enforces the MVFRL's requirement that, as a precondition for automobile insurers to issue policies with unstacked UM/UIM coverage, the carriers must first obtain written waivers from the policyholders. However, the Commissioner explains that, throughout Section 1738's seventeen-year history, once policies have been put into place, the Department has not treated the addition of a new vehicle, known in the industry as an "add-on," as a new purchase of coverage. Rather, the Department has deemed this to be an extension of pre-existing coverage. Thus, the Department has not required carriers to issue, or policyholders to execute, serial waivers when vehicles are added to multi-vehicle policies in order to reaffirm the continuation of unstacked UM/UIM coverage.

The Commissioner explains that the mechanism by which vehicles generally are added to existing policies is via "newly acquired vehicle clauses," which are made practically neces-

sary by the mandate of the MVFRL for financial responsibility as a prerequisite to operation of a motor vehicle, *see* 75 Pa.C.S. § 1786, and are included universally within automobile insurance policies issued in Pennsylvania. The clause explicitly permits consumers to extend existing coverage, with the same applicable types of coverage and limits, to new and/or substitute vehicles, with coverage applying automatically upon acquisition, subject to various conditions, including a requirement of timely subsequent notice to the insurer. According to the Commissioner, this procedure facilitates immediate consumer transactions and affords predictability and certainty in terms of the availability and scope of coverage. The Commissioner argues that *Sackett I* effectively nullifies the newly-acquired-vehicle clause in policies and strips policyholders of the associated benefits.

The Commissioner expresses further concern that insurers have relied for seventeen years on its interpretation as developed above, and that the invalidation of thousands of policyholders' UM/UIM stacking waivers may retrospectively render existing premium rates "inadequate" under various regulatory statutes,[1] because those rates were based on unstacked coverage. The Commissioner notes that attendant costs may be added back into rate bases and passed on to consumers, which is antithetical to the central purpose of Section 1738, namely, cost containment and the availability of automobile insurance at competitive, affordable rates.

The Sacketts differ substantially with the Insurance Commissioner's portrayal of *Sackett I's* import. According to their brief, there will always be "lag time" between the purchase of a new vehicle and the issuance of an updated policy and execution of an appropriate waiver, because, regardless of what is required of insurers upon a policyholder's addition of a vehicle to a multi-vehicle policy, the insurer must always obtain a waiver upon the addition of a vehicle to a single-

---

1. Specifically, the Commissioner references the Motor Vehicle Insurance Rate Review Procedures Act, 75 Pa.C.S. §§ 2001–2009, and the Casualty and Surety Rate Regulatory Act, 40 P.S. §§ 1181–1199.

vehicle policy.[2] Thus, the Sacketts believe that the provision of serial waiver opportunities is merely a matter of administration that is made necessary by the MVFRL and can readily be managed by insurance companies.

Significantly, the Sacketts agree with the Department that the automatic coverage extending under a newly-acquired-vehicle clause does not constitute a new purchase of coverage. *See* Appellant's Brief In Response at 8 ("The Amicus Statement of the Insurance Department is correct in that when a new vehicle is purchased under the 'newly acquired vehicle' clause there is not a purchase of new coverage in the sense contemplated by Section 1738."). The Sacketts claim, however, that coverage under such clauses persists only for the duration of the period within which the policyholder is required to provide notice to the insurer. *See id.* at 5–6 ("The contractual relationship of the parties [during the reporting period] is merely that the insured has agreed to accept and the insurer has agree to afford coverages during the reporting period for this new vehicle equal to the coverage on his existing vehicles in exchange for the luxury of delaying the arrangement for formal coverage at a later date."). Thus, the Sacketts concede that, during this reporting period, the insured would retain unstacked UM/UIM coverage on the new vehicle if a valid waiver was previously executed in connection with the policy. *See id.* at 6. It is the Sacketts' position, however, that upon the arrangement for formal coverage during the reporting period, new UM/UIM insurance is purchased on the vehicle, and thus, Section 1738 requires insurers to provide the opportunity to accept or waive stacked UM/UIM coverage. The Sacketts believe that automatic coverage

2. The Sacketts acknowledge this Court's decision in *Craley v. State Farm Fire & Cas. Co.*, 586 Pa. 484, 895 A.2d 530 (2006), which overruled a line of Superior Court decisions to the extent that they had voided stacking waivers executed in connection with single-vehicle policies. The Sacketts argue, however, that such waivers could only relate to inter-policy stacking and not intra-policy stacking, which could have had no applicability at the time the waiver was signed in connection with a single-vehicle policy. Therefore, even in the aftermath of *Craley*, the Sacketts continue to regard stacking waivers secured in connection with a single-vehicle policy to be ineffective relative to intra-policy stacking upon the addition of a second vehicle to the policy.

under a newly-acquired-vehicle clause extends only during the reporting period, and Department's assumption that such coverage continues throughout the life of the policy represents a fatal fallacy in its argument.

The parties and the Insurance Commissioner pursue several other lines of argument, touching on public policy, further effects of the *Sackett I* decision on the insurance industry, and points that were ably developed by Justice Castille in his dissenting opinion upon our initial review. Our interest in reargument, however, is focused on the contention that *Sackett I* can be read as negating the effect of after-acquired-vehicle clauses of automobile insurance policies, particularly since the mechanics of such provisions were not meaningfully developed in the initial proceedings in this case, and as we are aware that our initial decision has a broader effect than merely resolving the dispute between the present parties.[3]

■ Upon our present consideration, we believe that the Insurance Commissioner's argument that a UM/UIM stacking waiver remains in effect upon the acquisition of a vehicle covered under contractual after-acquired-vehicle provisions has substantial force. Under the Statutory Construction Act, words and phrases are to be construed according to the rules of grammar and their common and approved usage; however, technical words and phrases, and such others as have acquired a peculiar and appropriate meaning, are to be construed in accordance with such peculiar and appropriate meaning or definition. *See* 1 Pa.C.S. § 1903(a). The Insurance Commissioner's submission makes plain that the "purchase" of UM/UIM coverage under Section 1738(c) is a term of art in the automobile insurance arena that does not subsume the extension, under a contractual after-acquired-vehicle provision, of

---

**3.** In response to Justice Castille's assertion that our approach unduly narrows the scope of reargument, neither Nationwide nor the Insurance Commissioner raises all of the contentions which Justice Castille pursued in his *Sackett I* dissent. For example, Section 1791 of the Vehicle Code is not raised or discussed by Nationwide or the Insurance Commissioner in their reargument papers. Therefore, at least one of the Dissent's main points is plainly outside the appropriate scope of the reargument proceedings.

the pre-existing policy terms of a multi-vehicle policy to a newly-acquired automobile.[4] Indeed, as noted, the Sacketts' present argument expressly concedes this point, albeit while offering a contrary perspective concerning the duration of the extended coverage (a matter that we address further below). Thus, we clarify that *Sackett I* does not preclude the enforcement of an initial waiver of stacked UM/UIM relative to coverage extended under after-acquired-vehicle provisions of an existing multi-vehicle policy.

It remains to consider the disagreement concerning the duration of the automatic coverage under an after-acquired-vehicle provision. Decisions from other jurisdictions suggest that both varieties of after-acquired-vehicle clauses (those that afford closed-term coverage solely during the reporting period and those that contemplate continuing coverage) are utilized in automobile insurance policies. For example, in *Bird v. State Farm Mutual Automobile Insurance Company,* 142 N.M. 346, 165 P.3d 343 (2007), the court reviewed a policy containing an after-acquired-vehicle clause that extended coverage to new vehicles only until the thirty-first day after acquisition, thus requiring insureds to apply for a new policy to acquire coverage thereafter. *See id.* at 346–47. On the other hand, in *Satterfield v. Erie Insurance Property and Casualty,* 217 W.Va. 474, 618 S.E.2d 483 (2005), the after-acquired-vehicle clause in the policy under review extended continuing auto-

---

**4.** At a minimum, the substantial context furnished by the Insurance Commissioner reveals an ambiguity in Section 1738(c), which permits the application of principles of statutory construction, including the precept that the intention of the General Assembly may be ascertained by considering, among other matters, the administrative interpretation of the statute. *See* 1 Pa.C.S. § 1921(c)(8). Given the Insurance Department's legislatively prescribed role in the administration and enforcement of the MVFRL, its substantial expertise, and its possession of the tools necessary to verify the impact of its interpretations upon the remedial purposes of the MVFRL, *see, e.g.,* 75 Pa.C.S. §§ 1799.5, 1799.6, we afford substantial deference to its interpretation in the present instance insofar as it is consistent with actual policy terms as further discussed below. We also note that, at least where the named insured remains unchanged, the execution of the initial waiver by the named insured provides actual notice that the entitlement to stack benefits has been foregone, thereby satisfying the objective of Section 1738(c).

matic coverage, subject only to a condition subsequent of notice to the insurer concerning the purchase (and, presumably, payment of an additional premium). *See id.* at 485; *accord Christensen v. Mountain West Farm Bureau Mut. Ins. Co.*, 303 Mont. 493, 22 P.3d 624, 629 (2000) (concluding that, "if other conditions of 'after acquired vehicle' coverage are met, coverage on newly acquired vehicles attaches at the time of acquisition and continues for the policy period unless the insured refuses to pay any additional premium which is requested"). *See generally* LEE R. RUSS, 8A COUCH ON INSURANCE § 117:25 (3d ed.2007) (characterizing continuing coverage under an after-acquired-vehicle clause upon notice of acquisition to the insurer as effecting "an extension [of coverage] beyond the initial automatic period"). To the degree that coverage under a particular after-acquired-vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums, again, we clarify that *Sackett I* should not disturb the effect of an initial UM/UIM stacking waiver obtained in connection with a multi-vehicle policy. Again, our reasoning is that the term "purchase," as specially used in Section 1738, does not subsume such adjustments to the scope of an existing policy containing such terms.

 We hold that the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers.[5] However, where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, *see, e.g., Bird,* 165 P.3d at 346–47, *Sackett I* controls and requires the execution of a new

---

5. Our present holding is confined to the scenario involving the addition of a vehicle to a multi-vehicle policy. We do not resolve the Sacketts' arguments concerning situations involving additions to single-vehicle policies, which they contend are affected by factors other than the proper construction of the word "purchase" within Section 1738, including the Legislature's concomitant use of the modifying phrase "for more than one vehicle," 75 Pa.C.S. § 1738(c), as well as the intra- versus inter-policy distinction regarding stacking. *See supra* note 2.

UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration.[6]

The opinion in *Sackett I*, 591 Pa. 416, 919 A.2d 194, is modified by the above, albeit that we reaffirm the result.

Chief Justice CAPPY, Justice BAER and Justice BALDWIN join the opinion.

Justice CASTILLE files a dissenting opinion in which Justice EAKIN and FITZGERALD join.

Justice CASTILLE, dissenting.

I respectfully dissent.

I concur in the Majority's Opinion on Reargument to the extent that, going forward, it minimizes the damage caused by *Sackett v. Nationwide Mut. Ins. Co.*, 591 Pa. 416, 919 A.2d 194 (2007) (*"Sackett I"*). I also agree with the Majority's discussion and holding to the extent it approves of the Insurance Commissioner's construction of Section 1738(c) of the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1738(c). That construction essentially adopts my position in Dissent in *Sackett I*, and holds that the addition of a new

---

**6.** The Sacketts attached to their complaint copies of the declarations page, the initial UM/UIM waivers, and the UIM provisions of their policy with Nationwide. The general provisions of the policy, including the after-acquired-vehicle clause or clauses and associated definitions, were not invoked by Nationwide in its answer to the complaint and do not otherwise appear in the record. Since we cannot determine the duration of coverage extended under the particular after-acquired-vehicle clause pertaining to this case, we find insufficient basis on reargument to disturb the result obtaining under this Court's initial decision.

While Justice Castille indicates that there is no cause for concern over what the pertinent after-acquired vehicle clause actually says, we reiterate that the Insurance Commissioner's explanation concerning why there is no new purchase of coverage upon the addition of a new vehicle to an existing policy hinges on the mechanics of the clause. Thus, unlike Justice Castille, we do not regard evidence and argument concerning the operation of an after-acquired vehicle as "strong, additional support" for his previous dissenting opinion; rather, we view it as necessary support which previously was lacking (and remains absent in material part).

vehicle to an existing multi-vehicle policy does not constitute a new "purchase" of uninsured/underinsured motorist (UM/UIM) coverage, that would require a new waiver of stacking. However, I would not limit that conclusion, as the Majority does, to the notice period afforded to an insured under a newly acquired vehicle provision in the insurance policy. Nor would I afford appellants the windfall of stacking coverage they expressly rejected and for which they paid no premiums. As I stated in my Dissenting Opinion (joined by Mr. Justice Eakin) in *Sackett I,* "appellants did not purchase a new policy, but simply added a vehicle to an existing policy. The same policy appellants purchased in 1998 remained in effect, and the original waiver of stacking was part of that policy." *Id.* at 205.

The Majority states that it is merely "clarifying" the holding in *Sackett I.* But the linchpin of the analysis in *Sackett I,* and a primary point of dispute in the competing opinions, concerned whether the addition of a new vehicle was a new "purchase" of insurance. The four-Justice *Sackett I* majority said "yes," Justice Eakin and I said "no" in dissent, and today's Majority also appears to say "no." This does more than "clarify" *Sackett I.*

The submissions on reargument provide strong, additional support for my dissenting position in *Sackett I.* Accordingly, with respect to the Court's failure to go further and recall the mandate in *Sackett I,* I continue to find myself in respectful dissent. The Majority states that the Court's interest in reargument is limited, *i.e.,* that it is focused only on the contention that *Sackett I* can be read as negating the effect of after-acquired vehicle clauses. Maj. Op. at 15–18, 940 A.2d at 332–33. The vote to grant reargument was 4–2, my vote was one of the necessary four, and my vote was not that limited. My interest in granting reargument was for this Court to revisit *Sackett I* in its entirety, while also taking into consideration the submission of the Insurance Commissioner and the response to that submission. The narrower issue today's Majority focuses on apparently was not raised in the lower courts or argued here, until the Insurance Commissioner

remarked on the effect of *Sackett I* on those clauses. Certainly, the majority decision in *Sackett I* did not discuss the issue. The issue in *Sackett I* was simply whether a new waiver of stacking of UM/UIM coverage is required when an insured adds an additional vehicle to an existing multi-vehicle policy. I would retain that primary focus. On the merits, I would recall *Sackett I* and establish the plain meaning approach set forth in my Dissenting Opinion in that case as the proper answer to this question of statutory construction. *See Sackett I*, 919 A.2d at 204–05 (Castille, joined by Eakin, J., dissenting).

Today's Court Majority does not engage the issue as posed in *Sackett I*. Proceeding from its narrower focus, the Majority does its best to make lemonade out of the lemon that is *Sackett I*. The Majority's focus allows these particular appellants to retain their windfall, but at the same time reduces the overall exposure of the automobile insurance industry. The Majority thus notes that, based upon decisions from other jurisdictions, there may be two types of after-acquired vehicle provisions in Pennsylvania automobile insurance policies, offering different durations of "automatic coverage." One type of coverage "afford[s] closed-term coverage solely during the reporting period" while the other type "contemplate[s] continuing coverage." The Majority suggests that a new rejection of stacking may be required "where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy." Maj. Op. at 18, 940 A.2d at 334. Thus, the scope of coverage, and the prospect of recovery for future litigants, will depend upon which type of provision is in the policy. We do not know the answer to that question in this case—because it was not an issue until now—and so appellants are awarded coverage by default, coverage for which they never paid.

I prefer the simpler route of recalling the automotive lemon that was *Sackett I*. Because I respectfully disagree with the narrow scope of review the Majority exercises on reargument, I continue to believe that the plain language of the MVFRL dictates the result urged in my original dissent: that no new waiver is required when a vehicle is added to an existing multi-vehicle policy, and the terms of the policy in effect at the

time the additional vehicle is added remain the terms of the policy. Section 1738 contains no language requiring an additional waiver upon the purchase of an additional vehicle. 75 Pa.C.S. § 1738. Further, Section 1791 of the MVFRL specifically provides that an opportunity to reject coverage must be given **"at the time of application for original coverage, and no other notice or rejection shall be required...."** 75 Pa.C.S. § 1791 (emphasis supplied). In my view, this appeal remains one involving a simple issue of statutory construction that is easily resolved by resort to the MVFRL, specifically Sections 1738 and 1791. The plain language of those two Sections, as well as nearly two decades of Insurance Commissioner-approved industry practice, compels a conclusion that no new waiver of stacking is required when an insured adds an additional vehicle to an existing multi-vehicle policy. I would not alter the issue on appeal and make the result depend upon the language of an after-acquired vehicle provision.

I respectfully dissent.

Justice EAKIN and FITZGERALD join this dissenting opinion.